Next case is Hendricks v. Novae Corporate Underwriting. Mr. Davis. Good morning. May it please the court. The relief we received today is in three parts. One, we request that the district court affirm the district, I'm sorry, we request that this court affirm the district court's determination that the assignment was valid. Two, to find that the district court erred in applying Gandy to invalidate the settlement agreement. And three, remand to the district court for trial on damages in the coverage defense issues. When it comes to Gandy, we believe that the settlement, the assignment settlement and covenant not to execute is a package deal. If Gandy does not apply to the assignment, it does not apply to the assignment of the settlement and the covenant itself or any part thereof. I think the district court erred in finding that Gandy invalidated the judgment. We believe that the correct response to the district court was to, at that point, to give the parties an opportunity, particularly our client, to establish a reasonableness of the settlement amount. We believe that the settlement amount was not the type of sweetheart deal that public policy frowns upon. It was a result of a long protracted litigation. It was based on an expert report that Novae had an opportunity itself to review. That question is not in play here. I think the district court got the first question under Gandy wrong. The assignment is invalid under the principles set forth in that decision. This is not the kind of situation where the tender of a defense is a required precondition for that holding because there is no duty to defend. This is an excess policy. The court explicitly said that it was not passing judgment on circumstances in which each of the factors that the court identified for an invalid assignment would be in play. I think based on the principles that the court announced in that decision about collusive settlements that seek to put the insurer on the hook where the plaintiff and the defendant are in cahoots to do that, those principles are fully in play here. I guess I'm misunderstanding the court's point. My understanding of the district court's opinion is that the second element of Gandy did not apply. If we're getting it to apply as the Texas Supreme Court articulated in House of Fena, all the Gandy elements have to be absent. That was dicta. That was not a holding. The court was explaining why some other decision didn't apply in that case. There was no assignment issue or validity of an assignment in that case. The plaintiff didn't take an assignment of the defendant's rights under the insurance policy. That's what we have in play here. This is exactly on all fours with Gandy, except that there is no duty to defense, so the requirement that there be a defense tendered is just not in play here. I guess I'll respond in two parts, Your Honor. One, I do believe that the court erred in parsing the assignment and the settlement. I think that here the agreement is one agreement in and of itself. Well, right, the assignment is embedded in the consent judgment. Yes, and two, I believe there was a recognition on the part of Navi that they did have a duty to defend. In fact, they articulated that before the district court in an action that they brought themselves in 2008 here in Illinois, where they took the position that under the policy they had a duty that was akin to a duty to defend, where they had to advance essentially defense fees once the retention was met every 90 days. That's an excess policy. There's not a primary duty to defend. Sure. I think here they are recognized, as the court did in Banker's Trust in the Old Republic, that there was a real issue. It wasn't an academic exercise as to whether or not the duty to defend would arise. I think they took the correct position that that duty did exist, and so I would take the opposite position that I do believe that that particular element was relevant, and as articulated by the court in Gandy, all the elements have to be present in order for Gandy to invalidate. Actually, as I said before, that's not true as a matter of Texas law. The court in Gandy made explicit that each of those three factors need not be present. The dicta from the Evanston insurance case, or autofino, I'm not sure what the vernacular is for that case, was just that. It was dicta, and the case didn't have anything to do with the validity of assignments in this situation. The court was distinguishing away another case, and the court referred to five elements in Gandy, and there's only three. So I think we can fairly assume that that was just a stray remark by the state Supreme Court that really doesn't warrant the status of a holding, and we take Gandy on its own terms, and Gandy was explicit that we're not passing judgment on the requirement that all three of these elements be in place. Yes, Your Honor, and I think when you look at Gandy as a whole, Gandy was a public policy decision, particularly against so-called sweetheart deals. Here, those facts aren't present. It was not a sweetheart deal. The judgment amount itself was based on an expert report, where here the insurer was actually given notice of it. In fact, they participated in a mediation that took place with respect to the parties themselves, and they were active participants, so they were not surprised. There was no element of surprise, and they've never questioned the liability. They truly have never questioned the exposure, which they thought was real. Right, but that would be a valid argument if we were operating under a reasonableness standard, as in Illinois law. This case is governed by Texas law. And I, in Texas, my argument with respect to Texas is the alternative argument. Yeah, Texas says that these kinds of assignments are categorically invalid. I think that part of the ruling in Gandy was articulated as being dictated. I think Judge Enoch, in his current opinion in Gandy, so stated that. He felt that the court went beyond its duty and the holding in determining that all assignments are invalid. I think courts since Gandy have also articulated that, and that's been for a sense of confusion in the Texas courts as well. But if you read the scholars and legal journals, the authors all point out that, and Tofina clarifies that, to show that Gandy, for the proposition, is very limited, and it only applies when the Gandy elements are present. And I think the district court was correct. If the elements are not present, Gandy should not apply. I think where the district court erred is that they took a statement from Gandy regarding the invalidation of all assignments. That was dicta, as Judge Enoch pointed out for the Gandy court in his concurrent opinion. Let me ask you this, because you addressed it in the brief, but I want you to succinctly give me the reason why Novi, who was not a party to the settlement agreement, and did not participate in the negotiations around the agreement, why they should be bound by the agreement's choice of law provision. They should be bound by the choice of law provision. It's a contract, and Novi did have an opportunity to participate in the settlement. They elected not to. They attended an early mediation regarding the parties, so they were very aware of the settlement amount, the process. And so the numbers itself and the fact that the parties settled was not a surprise to them. In fact, they filed an actual declaratory judgment in the district court in this circuit, seeking to have coverage denied. They issued a letter to Cunningham-Lindsay, the insurer, basically stating that they were going to deny any coverage of the decline. So we don't question the coverage issues, but we do question whether or not the settlement, as it is, should be applied. And we're not asking the court to rubber stamp the judgment. We're basically asking for the reasonableness test, which is essentially what Ed Safin and even in Illinois and Guillen point out. And so we're not asking for a rubber stamp judgment. That would be the so-called fraud inclusion sweetheart deal. We're asking for an opportunity to go back to the district court to establish the reasonableness of the damages itself and address the coverage issue. Gandy itself holds that under these circumstances, even if the assignment is valid, in no sense is the judgment, and here that would be the consent judgment, enforceable against the insurer, nor can it be used as damages. So you've got to prove coverage and the merits of the underlying lawsuit in order to recover against the insurer. We believe the insurer reserved the coverage defenses. We recognize that. But we do believe we have the right to establish a reasonableness in the settlement. It's not for the actual judgment amount. That sets a cap in terms of damages we can pursue. Gandy says the judgment is not – a judgment that flows from this sort of arrangement is not enforceable against the insurer. And it can't even be introduced as evidence. This type of arrangement is very common, where you have an insurer abandons an insurer, where you have an insurer to abandon an insurer, and they're left with a choice to enter an agreement such as this, where you basically have a settlement, an assignment, and a covenant not to execute. As the court pointed out in Guillen, Illinois court, that it's been decided to, the fact that you have a covenant not to execute. But Hendricks didn't have a contract with Novi, did he? Pardon me, Your Honor? Hendricks didn't have any relation to Novi. I know, Your Honor. It was Cunningham, was the insured. I don't understand how Hendricks, having settled with Cunningham, gets to go against Cunningham's insurer. Let me clarify. Hendricks actually owned, was a shareholder of American Patriot, owned American Patriot. Pardon? American Patriot Insurance Company was owned by Dyn Hendricks and Hendricks Company. And that's how Hendricks is brought into the suit itself. Wait, I'm sorry. I don't understand. Dyn Hendricks and Hendricks Company owned American Patriot. So what? And it's part of the bankruptcy proceeding where this settlement came out of. They were participants in that. And they essentially bought the claims. How does that connect to Novi? It connects to Novi in the sense that the claims that American Patriot had were assigned to Dyn Hendricks and to Hendricks Company. And Novi, in that instance, was the insurer, reason being Cunningham and Lindsley. So it's part of the settlement of a case that was before this court back in 2004 that actually came before this panel. American Patriot versus mutual agreements. That particular case is a part of this. In that case, Your Honor, I addressed the Cunningham-Lindsley issue with respect to taxes and policy issues as a side issue. But this has been a long, drawn-out litigation. It's not something that's new. And Novi has been a part of it. And as I stated, Dyn Hendricks and Hendricks Company own shares in American Patriot Company. Why should we permit Novi to argue here that it did not have a duty to defend if in the earlier proceeding it asserted it very well could have a duty that was akin to a duty to defend? We think Novi should be held to their early representation. They stated that they had a right to defend. And we think that they made the correct decision when they argued that before the district court in a prior proceeding. Well, if Novi was concerned that there was perhaps this duty to defend, why didn't it assert a defense in the Texas litigation? It did not. It was very aware of the Texas litigation. And while the Texas litigation was pending, it issued a notice to our client basically denying coverage. And it sought the declaratory judgment here in the court in Illinois. Right. So it made a good-faith effort to adjudicate the coverage question. It did. And as I understand and read Gandy, all three elements, Your Honor is correct, it's three instead of five. All three have to be present. If the duty to defend exists in the contract, which is not the case in an excess policy, the duty to pay defense costs in an excess policy kicks in after the retention is exhausted and there is no primary duty to defend. That's just how excess policies work. Yes, I'll make two points. So we don't read these as rigidly as you're suggesting that we must. Two points. My argument with respect to Texas is the alternative. I think here the law of the contract, which was Illinois, should actually be the substantive law that actually governs. And if you look at Illinois law, then you actually do get to the reasonableness test. And Illinois law was cited by- The law of the contract you're referring to, the settlement agreement. The settlement agreement. Yes, Your Honor. That's what sits you here. Nofay wasn't party to the settlement agreement. So it can't be bound by that choice of law. Respectfully, as the district court pointed out in its decision, that the parties would address what state law would actually apply to the country. That's a separate issue. We're essentially dealing with the settlement agreement that's on here itself. And in that, the parties evoke Illinois as- The parties to the settlement. Nofay wasn't a party to the settlement. Yes, Your Honor. So it can't be bound by the choice of law that somebody else finds itself. But Illinois follows Section 1981 on the conflicts of law, which basically states that unless the underlying agreement somehow is offensive to the state policy, that it would apply. Right. And it is offensive to Texas policy, which invalidates assignments of this sort. I don't think Texas law invalidates all assignments. I think Ed Tofina limited the application again, Your Honor. Assignments in this situation, where the plaintiff takes an assignment of the insured's rights in order to stick it to the insurer. And the insured sticks it to the insurer by giving away contested insurance rights. But you have to look at the facts and circumstances of the case. And the facts and circumstances here does not support that. The district court did not go through a fact-finding to make that determination here. And I think our client should be afforded the rights to do so, to accept that it was not a collusive decision. It was a decision that was based on an expert report that Nofay had an opportunity to see and also participated in a prior mediation of it. They elected not to defend, although having argued with the court that they had the obligation to do so. So they essentially- It's what they bargained for. It's an excessive coverage policy. There's risk inherent in that. That's just a reasonableness argument about whether the settlement was reasonable. And that's not the domain that we're in. We're in this categorical rule that invalidates assignments of this sort. But a bigger policy issue, Your Honor, is if you have an insurer that abandons an insurer, what are they left to do? There was no abandonment here. There was no duty to defend until the million-dollar retention was exhausted. So there isn't any abandonment going on here. And there was a good-faith effort on the part of the insurer to litigate the coverage question and whether it did owe a duty to defend under these circumstances. They could have tendered a defense with a reservation of rights, but they elected not to do so. That's what a primary insurer has an obligation to do. You're mistaking the difference between primary insurance policies and excess policies. A primary insurer that guarantees defense and indemnification has a duty to defend and has to defend on a reservation of rights. We've got an excess carrier here. I understand, which makes it different from the assignment in Selma that the court dealt with in Gandy. It's a different set of facts and circumstances here, which is why I would argue that Gandy should not apply that the controlling case in Texas is atrophied. Gandy applies without the tender of defense requirement. That's the proper answer here. Hold on. Atrophied was an excess coverage case, which is why we rely heavily on that. Okay. Thank you, Mr. Davis. Mr. Lovato. Yes, Your Honor. Good morning. I want to make sure there's no misunderstanding here. Novine never said it had a duty to defend. It said it would have a duty to advance were the retention met. What we haven't heard here is that the insured was being defended because they had an infill policy, and that infill policy had been issued by an AIG subsidiary, and it was paying for the defense of Cunningham-Lindsey in the Texas case. And they had $650,000 or something left of the policy that they had issued, and that was the other payment that was made in connection with the settlement agreement. So there was no abandonment. There was no abandonment. And one of the other points that were made, this notion that somehow my client had a duty or would still have a duty to pay if this case were remanded and there were some opportunity on the part of the plaintiff here to prove the reasonableness of the settlement or perhaps prove what really would have been reasonable for a settlement. Remember, the settlement was for the full, absolute full amount of what was being claimed by the plaintiff in the underlying case. But under the policy, there's always a... But was it conditioned on going after Novi? Yes, it was. There was an agreed judgment, a covenant not to execute against Cunningham-Lindsey, the insured, but to focus solely on the insurance company. So Hendricks would sue Novi. That was agreed. That was agreed, yes. And a covenant not to, and then the assignment of rights against the insurance company. My client only has an obligation to pay loss, and the district court found that, given the fact that there was a judgment entered as a result of the settlement agreement, which is unenforceable, and that all of the other claims that the plaintiff might have had against Cunningham-Lindsey were released in the settlement agreement and merged into the judgment, there could not be a proof of loss anymore. It's impossible. And so that's why the district court said there's no need, cannot ever prove loss in this case. There was an opportunity given to counsel to file an amended complaint to show what other damages for breach of contract they might have, and they came back with an amended complaint that the district court said was not sufficient, and the briefs show that, concede, that ruling by the district court dismissing the second amended complaint is not being appealed here. So I had not planned to talk very much about traditional conflicts of law analysis. I think the case, the principal argument, is that the case is controlled by rather straightforward full faith and credit principles under the U.S. Constitution Full Faith and Credit Act. And the fundamental principle that can be derived from those sources is that a judgment that's entered in a foreign state must be given the same effect in a foreign state as that judgment would have in the state of its entry. If we affirm the district court's decision that the settlement agreement is not enforceable against nobody, what practical effect does this have upon Hendrick's ability to collect on the Texas judgment? I think the case is over. The case is over because all the claims have been merged into that judgment, and the judgment's unenforceable. It's not binding on the insurance, it's unenforceable. That's what they chose. They didn't settle for an amount. They settled for a judgment. And the way they settled that judgment, the Texas Supreme Court has been trying for 20 years to discourage this practice. They've set down a very clear rule. You don't do it this way, or else it will be unenforceable. And there have been cases since Gandhi where people have just done it anyway and they're out of luck. You don't go back and litigate what the reasonable settlement would have been, especially where all of the litigation positions have been distorted. And the only people that know about this are the plaintiff and the defendant, and they're on the same side. How is the insurer to come in and litigate the underlying case or the reasonableness of the judgment? Did Hendrick get any money? Yes. They got whatever was left. They said it was about $650,000. They got whatever was left on the AIG subsidiary policy. And how much more does he want? Well, the difference between whatever they did get and $5,120,000. Now... It was just a bad bargain under Texas law. Yes. I mean, there's some indication that we attended a mediation. We did a lot more than that. I flew out to Boston to interview the plaintiff's expert because I looked at the two reports and I said, I'm not convinced. Will you let me sit down with your expert? And they said, yeah. So I went up and interviewed the expert, and we could not come anywhere near to a deal. But it's not that we abandoned anybody. We had no duty, and yet we were still there participating in an attempt to try and settle the case. So I think our principal point is that the effect of the judgment has to be determined under Texas law. Appellants suggest that because they decided in a settlement agreement to incorporate Illinois law, and granted, Illinois would treat a settlement like this differently. It would enforce it if the appellants could prove the reasonableness of the settlement. But just because there's a difference between how Texas would treat the settlement and Illinois would treat the settlement doesn't mean that there's a clash of public policy, and that's one of the arguments that they've made here. There's no clear public policy in Illinois. It would be kind of a silly public policy for Illinois to say, we insist upon enforcing a judgment out of a state that doesn't enforce it itself. I just can't see that as being public policy. But even if it were, there's no public policy exception to the full faith and credit clause or the full faith and credit act, and the Supreme Court has recognized that. Now, moving on to the validity of the assignment, we have argued that because we didn't have a duty to defend, that factor ought to drop out of the analysis. The district court disagreed, said I have to apply the law as the state Supreme Court in Texas has laid it down. That's a factor. It's not shown here, so the assignment is valid. But I agree, Judge Sykes, that obviously we've made the argument that that ought to just drop out of the analysis. But even if under Gandy itself the assignment is not invalid, Gandy did make it very clear that there would be other situations in which it might find that assignments like the ones here with a covenant not to execute and an agreed judgment would not be enforceable. And I think you don't have to look much further than a case that is described in great detail in the Gandy opinion itself. That's the HSM acquisition case. It wasn't an insurance case. It was a landlord-tenant case where the tenant was alleged to owe an indemnity obligation. And there was the same sort of settlement between the landlord and the tenant, the assignment of rights, covenant not to execute, and the appellate court in that case, Texas appellate court, had invalidated the assignment. And the Texas Supreme Court went through that and said we agree. This presents all the concerns that are presented here in Gandy, and the district and the appellate court did the right thing. Well, guess what? There was no duty to defend in that case. So I think we understand how the Supreme Court would come down in this case, Texas Supreme Court, if it were asked, well, under these circumstances, is the assignment valid? We know that they would say no because this case presents every one of the concerns that they articulated that they had so many problems with, the possibility of fraud, possibility of collusion, the multiplication of litigation, and the distortion of litigation positions. So to summarize, I think that our view is that under full faith and credit principles, Texas law governs the effect of the Texas judgment, and the Texas judgment is unenforceable and not binding on my client. And as an alternative but independent ground, the assignment is not valid, either because we've met all the Gandy factors that are applicable or because, and we've asked the court to make an eerie guess here on how the Texas court would come down in this case, and we think it's rather clear that the Texas court would invalidate the assignment. Okay. Thank you, Mr. Lovato. Mr. Davis, do you have anything further? I take the position that it's clear that there's some confusion with respect to what Texas law is, and that the court does decide to rest its decision on Texas. I think that particular issue as to whether or not all assignments that include such covenants are invalidated, I think that's something that should be certified to the Texas Supreme Court. As Justice Sykes pointed out, there's some confusion as to what is dicta. The scholars have pointed to statements regarding the invalidation statement as being dicta. Some have stated that, most have stated that entrofina sort of clarified and sort of limited the application of Gandy. And so the parties still relied on that. So there's some confusion as to what respect texted is. You actually want to go down and litigate this in Texas in front of the Supreme Court if you're asking for certification? I'm looking for relief from my client, Your Honor, essentially here. They're real claims. They're real issues. There's real exposure. And as Judge Wiggins pointed out, it's just that the judgment goes up in smoke. It doesn't make sense here where there's a technical issue with respect to which dicta and which not, two cases. The entrofina case is the most recent case. So courts have followed that. Scholars have articulated that case to limit the application of Gandy, particularly where the Gandy elements are not met. But as I stated, I'll argue Texas is the alternative. I think the law of the contract should govern here Illinois. And as counsel agreed, if Illinois law does applies, then it is a reasonableness test. And that's a test that we think should be employed here, Your Honor. Thank you. Okay. Thank you very much, Mr. Davis and Mr. Navarro.